UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Telephone Science Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Asset Recovery Solutions, LLC,<br><br>    Defendant. | Case No. Case No. 15-cv-05182<br><br>U.S. District Judge:<br>  Honorable Amy J. St. Eve<br><br>**PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |

Plaintiff, Telephone Science Corporation ("TSC"), by and through its attorneys, Hyslip & Taylor, LLC, LPA, respectfully submits the following memorandum in opposition to the Rule 12(b)(6) motion to dismiss filed by Defendant, Asset Recovery Solutions, LLC ("ARS").

**I.    PRELIMINARY STATEMENT**

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, is a strict liability statute that focuses on the conduct of the ***caller***, not the called party. Under the TCPA, a robocaller faces significant liability under the TCPA for its illegal calls, regardless of ***how the call was answered***, *see Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) (calls answered by plaintiff's computerized voicemail system), ***why the call was answered***, *see Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579, *8 (N.D. Ill. June 13, 2011) (St. Eve, J.) ("Characterizing Plaintiff as a 'professional plaintiff' does not boost [Defendant's] argument"); *Charvat v. Travel Servs.*, 2015 U.S. Dist. LEXIS 81770, *10-11 (N.D. Ill. June 24, 2015) (Wood, J.) (plaintiff's motivation of "financial gain rather than selfless consumer advocacy" is irrelevant to TCPA claim), or ***whether the call was answered at all***, *see Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (Guzmán, J.) (TCPA class certified as to members who received voice messages from defendant without regard to whether class

1

members answered any calls). Moreover, the TCPA does not require a business plaintiff to show that its business was disrupted as a result of the defendant's misconduct. *See* Palm *Beach Golf Center-Boca, Inc. v. Sarris, D.D.S., P.A.,* 771 F.3d 1274, 1281-82 (11th Cir. 2014) (business had standing to bring TCPA claim based on **fax transmission that no employees ever saw**).

TSC's claims against ARS are not complex. While the underlying facts are somewhat unique, the issues presented are straightforward and have been addressed numerous times by this Court and others. For the reasons stated below, this Court should deny ARS's Rule 12(b)(6) motion to dismiss the first amended complaint ("FAC").

## II.    PROCEDURAL HISTORY

On June 12, 2015, TSC filed a two-count complaint [Doc. No. 1] based on ARS's alleged violations of the TCPA. Thereafter, on August 5, 2015, ARS filed a motion to dismiss [Doc. No. 17] and a motion to stay the proceedings [Doc. No. 19]. The next day, ARS filed a corrected motion to stay [Doc. No. 24].

On August 7, 2015, TSC filed the FAC [Doc. No. 26].[1] The FAC is a detailed pleading that outlines the nature of TSC's business, ARS's autodialing practices, and the thousands of robocalls ARS placed to TSC's telephone numbers without TSC's express consent. The FAC also provides factual and legal authority as to why ARS's robocalls violated that statute.

TSC alleges that ARS violated § 227(b)(1)(A)(iii), which makes it "unlawful for any person within the United States… to make any call… using any automatic telephone dialing system or an artificial or prerecorded voice…to **any telephone number** assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier

---

[1] In an effort not to burden the Court with multiple copies of documents that have already been filed in connection with ARS's pending motions, TSC will refer to those previously filed documents herein by the filed Document Number, rather than attach them as new exhibits to this memorandum. Courtesy copies of all documents have been, or will be, provided to the Court.

service, or **any service for which the called party is charged for the call**…" (See FAC, Doc. 26, ¶ 41) (*quoting* 47 U.S.C. §§ 227(b)(1)(A)(iii)) (emphases included in FAC). TSC also alleges that ARS "willfully" and "knowingly" violated the TCPA. *Id.*, at ¶¶ 55-63.

On October 9, 2015, following a brief period in which the Court permitted "limited discovery," ARS filed a Rule 12(b)(1) motion to dismiss [Doc. No. 47] and the Rule 12(b)(6) motion to dismiss [Doc. No. 45] to which this memorandum responds.

### III.  LEGAL STANDARD FOR RULE 12(b)(6) MOTION

This Court has stated the legal standard for ruling on a Rule 12(b)(6) as follows:

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*quoting Twombly*, 550 U.S. at 570). In ruling on Rule 12(b)(6) motions, courts may consider "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

*Kawczynski v. F.E. Moran Inc. Fire Protection of N. Ill.*, 2015 U.S. Dist. LEXIS 142878, *3-4 (N.D. Ill. Oct. 21, 2015) (St. Eve, J.).

In this case, the detailed allegations of the FAC "give [ARS] fair notice of what [TSC's] claim is and the grounds on which it rests." This is evidenced by the multiple motions ARS has filed, which reveal ARS's in-depth understanding of TSC's business, which calls were answered and not answered, and why TSC believes it is entitled to relief under the TCPA.

3

## V. LEGAL ARGUMENTS

### A. The TCPA's Prohibitions and Statutory Remedies.

The TCPA prohibits the use of an autodialer to place calls to certain types of telephone numbers where the ***current subscriber*** to the number has not provided "express consent" to be called, 47 U.S.C. § 227(b)(1)(A)(iii), or has revoked that consent in "any reasonable manner," *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 38, ¶ 70. To avoid violating the TCPA, a robocaller simply needs to verify that the ***current subscriber*** of a telephone number has provided express consent to be called or has not revoked its previously given consent. Once the robocaller has done that, it is free to load the telephone number into its autodialer and robocall the number until such time that the subscriber revokes its consent or the telephone number is transferred to a new subscriber. *See Soppet*, 679 F.3d, at 641 ("any consent previously given, lapses when Cell Number is reassigned.")

The potential liability a robocaller faces for violating the TCPA is significant – $500 to $1,500 ***per violation***. *See* 47 U.S.C. § 227(b)(3). As this Court has made clear, however, Congress is under no obligation to make illegal behavior affordable, particularly where the wrongdoer has committed multiple violations. *Phillips Randolph Enterp., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) (Kocoras, J.). By making the practice of repeatedly violating the statute "prohibitively expensive," the TCPA serves its intended goal of deterrence, *Id.*, at *7, and provides an incentive for private enforcement of the law, *Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

To help robocallers avoid significant liability under the TCPA, courts admonish robocallers to place "intermittent live calls" to each number they are calling and verify that the current subscriber has consented to be called. *See, e.g., Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp.

4

1316, 1322 (S.D. Fla. 2012), *aff'd* 755 F.3d 1265 (11th Cir. 2014). This is sound and easy-to-follow advice. *See Soppet*, 679 F.3d, at 639 ("A human being who called Cell Number would realize that Customer was no longer the subscriber.") The problem for robocallers is that placing live verification calls costs money. Robocallers have a choice – either incur the costs associated with intermittent live calls, or continue to use a more cost-efficient autodialer technology and risk violating the TCPA.

> **A.     The TCPA applies to "any service for which the called party is charged for the call" and does not require that the service be a wireless service.**

Section 227(b)(1)(A)(iii) of the TCPA provides, in part:

> It is unlawful for any person…to make *any call*…using any automatic telephone dialing system or an artificial or prerecorded voice…(iii) to *any telephone number* assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or *any service for which the called party is charged for the call*….

47 U.S.C. § 227(b)(1)(A) (emphases added). For years, defendants in TCPA cases have unsuccessfully argued that the "charged-for-the-call" provision in § 227(b)(1)(A)(iii) applies to the wireless services described in that section and, therefore, only robocalls to wireless numbers *where the called party incurred a charge* were prohibited. Courts have overwhelmingly rejected that argument. *See, e.g., Lozano v. Twentieth Century Fox Film Corp.,* 702 F. Supp. 2d 999 (N.D. Ill. 2010) (St. Eve, J.) (cited in ARS's motion at p. 5 and holding "the phrase 'for which the called party is charged for the call' only modifies "any service" and does not apply to the other wireless services identified in Section 227(b)(1)(A)(iii)).[2]

Ignoring the settled case law (which ARS cites in its brief) holding that "wireless services" are not subject to the "charged-for-the-call" provision, ARS argues that "any service for which the

---

[2] *See also Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1220-221 (N.D. Ala. 2012) (cited in ARS's motion in fn. 3); *Buslepp v. Improv Miami, Inc.*, 2012 U.S. Dist. LEXIS 62489, *4-5 (S.D. Fla. May 4, 2012)(cited in ARS's motion in fn. 3).

5

called party is charged" must be a wireless service in order to be covered by § 227(b)(1)(A)(iii). This too has been rejected by courts, including this Court, that have addressed the issue.

In *Lynn v. Monarch Recovery Mgmt., Inc.*, 2013 U.S. Dist. LEXIS 41700 (D. Md. Mar. 25, 2013), the plaintiff alleged that the defendant, a debt collector, violated § 227(b)(1)(A)(iii) by robocalling the plaintiff on his residential telephone number, which was provided by a VoIP telephone service that charged the plaintiff for each incoming call placed to his telephone number. The *Lynn* court held that, even if the defendant's calls were not prohibited by § 227(b)(1)(B) (applicable to residential lines), they violated the clear language of § 227(b)(a)(A)(iii), which prohibits robocalls to "any telephone number assigned to…***any service for which the called party is charged for the call***." *Id.*, at \*37-38 (emphasis included).

On appeal, the Fourth Circuit affirmed, holding:

> We conclude that the call-charged provision's plain language encompasses [defendant's] calls to [plaintiff]. *Cf. Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1257-58 (11th Cir. 2014). ***Moreover, we reject [defendant's] attempt to escape the clear breadth of the call-charged provision by relying on the FCC's regulation excepting debt collectors from the TCPA's separate prohibition on "call[s] to any residential telephone line using an artificial or prerecorded voice to deliver a message," 47 U.S.C.A. § 227(b)(1)(B), and several rules of statutory interpretation.*** *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 144 n.6 (4th Cir. 2014). Indeed, Congress' purpose in enacting the TCPA advises against [defendant's] effort to limit its liability. *See Clodfelter v. Republic of Sudan*, 720 F.3d 199, 211 (4th Cir. 2013); [*Broughman v. Carver*, 624 F.3d 670, 677 (4th Cir. 2010)]; *see also In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14092 (2003) (explaining Congress's intent in enacting call-charged provision).

*Lynn v. Monarch Recovery Mgmt., Inc.*, 586 Fed. Appx. 103, 103-104 (4th Cir. 2014). The portion of the FCC's 2003 Order, cited by the Fourth Circuit in *Lynn* states, in part:

> The legislative history also suggests that through the TCPA, Congress was attempting to alleviate a particular problem--an increasing number of automated and prerecorded calls to certain categories of numbers. [footnote omitted] The TCPA does not ban the use of technologies to dial telephone numbers. It merely prohibits such technologies from dialing emergency numbers, health care facilities, telephone numbers assigned to wireless services, ***and any other numbers for which the consumer is charged for the call***. [footnote omitted]

6

> …Coupled with the fact that autodialers can dial thousands of numbers in a short period of time, calls to these specified categories of numbers are particularly troublesome.

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14092 (2003) (emphasis added). Consistent with the holding in *Lynn*, the FCC referred to "wireless services, *and* any other numbers for which the consumer is charged for the call." It did not refer to "wireless services for which the called party is charged for the call."

The lone TCPA case that ARS cites for the proposition that the "charged-for-the-call" provision in § 227(b)(1)(A)(iii) applies only to wireless services is *Warnick v. Dish Network LLC*, 2014 U.S. Dist. LEXIS 138381 (D. Colo. Sep. 30, 2014). The issue in *Warnick*, however, was not whether the "charged-for-the-call" provision applied only to wireless services, but instead whether the phrase "any telephone number" in § 227(b)(1)(A)(iii) includes a cell phone used for business purposes. *Id.*, at *30. In holding that § 227(b)(1)(A)(iii) *does* apply to a business cell phone, the *Warnick* court stated, "[t]his finding is also consistent with the Tenth Circuit's holding that when Congress uses the general term '*any*' to modify a term, as in § 227(b)(1)(A)(iii), 'it meant to give that term an "*expansive*" meaning.'" *Id.*, at 33. Any *dicta* in *Warnick* suggesting that robocalls may be permitted to other types of business lines should not influence this Court's analysis. The issue now before this Court was not before the court in *Warnick*.

In *Telephone Science Corp. v. Trading Advantage, LLC*, 2015 U.S. Dist. LEXIS 18591 (N.D. Ill. Feb. 17, 2015) (Gúzman, J.), this Court was fully apprised of the *Warnick* decision when it considered a similar motion to dismiss in an action filed by TSC involving similar claims to those alleged against ARS in the instant case.[3] This Court denied that motion, holding:

---

[3] *See* TSC's Response to Motion to Dismiss, filed in *TSC v. Trading Advantage*, attached hereto as "Exhibit A," pp. 2-11; Reply in Support of Motion to Dismiss, filed in *TSC v. Trading Advantage*, attached hereto as "Exhibit B," p. 5.

7

> TSC subscribes to a service which charges for incoming calls as well as a Voice Over Internet Phone ("VOIP") service. TSC does not subscribe to a traditional landline service. TSC alleges that it is the called party of the subject telephone numbers. [Citations to complaint omitted.]
>
> * * *
>
> "The preeminent canon of statutory interpretation requires that courts presume that the legislature says in a statute what it means and means in a statute what it says there." *Patriotic Veterans, Inc. v. Ind.*, 736 F.3d 1041 (7th Cir. 2013) (internal citations, quotation marks and alterations omitted). The plain language of the statute states that it is unlawful to make "**any** call using any automatic telephone dialing system" to "any telephone number assigned to . . . **any** service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(emphasis added). Because the language of the statute is unambiguous, does not expressly exclude calls made to businesses (indeed, it uses the broad and inclusive word "any"), and TSC's allegations fall within the statutory prohibition of § 227(b)(1)(A)(iii), the Court rejects the defendants' position.

*Telephone Science Corp. v. Trading Advantage*, 2015 U.S. Dist. LEXIS 18591, at *2-3. Thus, despite *Warnick*, this Court has concluded that TSC's business VoIP telephone service is a "service for which the called party is charged for the call."

> **B.** **Section 227(b)(1)(A)(iii) applies to *all* robocalls that ARS placed to TSC's telephone numbers because the TCPA prohibits the act of *making* the call, regardless of whether the call was answered.**

According to ARS, because TSC does not incur per-minute charges for calls it does not answer, ARS's unanswered robocalls to TSC were not made to a "service for which the called party is charged for the call." (*See* Rule 12(b)(6) Motion to Dismiss, Doc. No. 46, p. 5.) This is not logical based on how other provisions of the TCPA are worded and structured and how calls to other types of services are treated.

A telephone service does not change its fundamental character depending on whether a call is answered or not. For example, a cellular service is a cellular service, regardless of whether a call to that service is answered. In the 1990s, cellular service customers paid for answered calls. This was the fundamental character of cellular service at the time. The service did not cease being a service for which the customer paid for the call simply because some calls went unanswered.

8

The 1990s provided the telecommunications landscape in which Congress was legislating when it enacted the TCPA. At that time, Congress's intent was to sanction the act of *making* a call to the specified service, independent of whether the call was answered, and regardless of whether the called party incurred a charge for *each* illegal call. *See King v. Time Warner Cable*, 2015 U.S. Dist. LEXIS 88044, *12 (S.D.N.Y. July 7, 2015) (a robocaller "violate[s] the [TCPA] each time it place[s] a call using its [autodialer] without consent, regardless of whether the call was answered by a person, a machine, or not at all."); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013). For that reason, this Court should reject ARS's argument that only the robocalls that were answered by TSC are subject to the prohibitions of § 227(b)(1)(A)(iii).

Congress granted a private right of action to individuals and entities to receive statutory damages in the amount of $500 to $1,500 "*for each such violation*" of the statute (*i.e.*, each act of *making* an illegal call). *See* 47 U.S.C. § 227(b)(3). Congress also granted individuals and entities a private right of action to enjoin the robocaller from continuing to *make* illegal robocalls in violation of the Act.[4] *Id.* Because the goal of the TCPA is to make the practice of repeatedly violating the statute "prohibitively expensive" and serve the statutes intended goal of deterrence, *Phillips*, 2007 U.S. Dist. LEXIS 3027, *7, it follows that the only way to accomplish that goal is to sanction *each* wrongful act of *making* an illegal robocall to a telephone number assigned to a service described in "charged-for-the-call" provision.

If this Court were to adopt ARS's position that only an *answered* robocall to a "service for which the called party is charged for the call" violates the TCPA, it would lead to inconsistent

---

[4] In the FAC, TSC seeks to enjoin ARS from placing further calls to the TSC telephone numbers.

9

statutory damage awards for *identical* misconduct and render ineffective the injunctive relief authorized by the TCPA. Consider the following examples:

Example 1: Debt Collector places 50 robocalls to a VoIP service without called party's consent. The VoIP service assesses a per-minute charge for inbound answered calls. The called party answers 40 calls, and 10 are unanswered.

Under TSC's interpretation, the called party has a private right of action for statutory damages based on 50 violations of the statute and may obtain an order enjoining further robocalls by Debt Collector to the called party's telephone number.

Under ARS's interpretation, the called party has a private right of action for statutory damages based on 40 violations of the statute and may obtain an order enjoining further robocalls by Debt Collector to the called party's telephone number.

Example 2: Debt Collector places 25 robocalls to the called party's cellular service and 25 robocalls to the called party's VoIP service without the called party's consent. The called party answered 5 calls to the cell phone number, and none of the calls to the VoIP number.

Under TSC's interpretation, the called party has a private right of action for statutory damages based on 50 violations of the statute and may obtain an order enjoining further robocalls by Debt Collector to both services.

Under ARS's interpretation, the called party has a private right of action for statutory damages based on 25 violations of the statute (calls to the cell phone only) and may only obtain an order enjoining further robocalls by Debt Collector to the cell phone number. The called party would not be entitled to injunctive relief as to future robocalls by Debt Collector to the VoIP number because the called party did not answer any calls to that number.

Example 3: The called party is the subscriber to two (2) cell phones. Debt Collector places 25 robocalls to each cell phone (50 total) without the called party's consent. The called party did not answer any of the calls, but used a single minute of his limited cellular airtime plan to check the voice messages Debt Collector had left.

Under TSC's position *and* ARS's position, the called party has a private right of action for statutory damages based on 50 violations of the statute and may obtain an order enjoining further robocalls by Debt Collector to both services.

Only under TSC's interpretation of the "charged-for-the-call" provision do the above examples yield consistent results that sanction Debt Collector for *each* act of *making* an illegal robocall without the consent of the called party. In contrast, under ARS's interpretation, the sanctions imposed on Debt Collector and the injunctive relief available to the called party are

10

inconsistent, even though the number of robocalls made without the called party's consent is identical in each example.

*None* of the cases cited by ARS in support of its argument involved calls to a VoIP service or toll free telephone service for which the called party incurred a per-minute charge when the call was answered. Instead, each of the cases on which ARS relies involved calls to a cellular telephone service and addressed whether § 227(b)(1)(A)(iii) prohibited robocalls to a cellular service where the called party did not incur charges as a result of the defendant's calls. To the extent any of those cases include commentary suggesting that the "charged-for-the-call" provision required the called party to incur a charge for "*each*" call, such commentary was merely *dicta*. Neither the parties, nor the courts, in any of those cases analyzed the specific issue that is now before the Court.

   C. **The TCPA authorizes *any* "individual or entity" to enforce the Act's provisions and, therefore, the "zone of interests" is expanded to the full limits of Article III.**

In *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997), the question before the Court was whether the plaintiffs, who were not environmentalists, but businesses motivated by economic interests, had Article III standing to challenge a biological opinion issued by the Fish and Wildlife Service in accordance with the Endangered Species Act of 1973 ("ESA"). *Id.*, at 157, 117 S. Ct., at 1158-59. Justice Scalia, writing for a unanimous Court, noted that the citizen-enforcement provision of the ESA authorized "any person" to bring an action to enforce the Act. *Id.*, at 165-66, 117 S. Ct., at 1162-63. According to the Court, because the Act "encourage[s] enforcement by so-called 'private attorneys general'" and does not require potential plaintiffs to be environmentalists seeking to protect wildlife, the "zone of interests" is "expanded to the full extent permitted by Article III." *Id.*; citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S. Ct. 364 (1972).

The Supreme Court has also held that Article III standing can exist even where the plaintiff purposefully chose to interact with a defendant engaged in illegal misconduct. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982), one of the plaintiffs was a "black tester," *i.e.*, a black individual who had no intention of renting an apartment from the defendants, but instead merely posed as a potential renter for the purpose of determining whether the defendants were engaged in "racial steering" practices in violation of the Fair Housing Act of 1968 ("FHA"). *Id.*, at 373, 102 S. Ct. 1114, 1121. In considering whether the black tester had standing to bring an FHA claim, Justice Brennan, writing for another unanimous Court, observed that the FHA made it unlawful "'[to] represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.'" *Id.* (emphasis included); *quoting* 42 U.S.C. 3604(d). According to the Court:

> [T]he sole requirement for standing to sue under [the FHA] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered "a distinct and palpable injury," *Warth v. Seldin*, 422 U.S. 490, 501 (1975).
>
> * * *
>
> A tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. ***That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the Act.]*** See *Pierson v. Ray*, 386 U.S. 547, 558 (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam).

*Havens Realty*, 455 U.S., at 373-74, 102 S. Ct., at 1121-22 (emphasis added).

In its motion, ARS relies primarily on *County of Cook v. Wells Fargo & Co.*, 2015 U.S. Dist. LEXIS 93380 (N.D. Ill. July 17, 2015), to argue that even where Congress has authorized "any person" to bring an action to enforce a statute, Article III standing is still limited by prudential "zone of interests" test. That case does not reflect the majority view and has already been criticized in two (2) published opinions, including one issued by a judge within this district.

In *County of Cook v. HSBC N. Am. Holdings, Inc.*, 2015 U.S. Dist. LEXIS 133239 (N.D. Ill. Sep. 30, 2015) (Lee, J.), this Court concluded that the *County of Cook v. Wells Fargo* case was at odds with the long line Supreme Court and Seventh Circuit precedent, as well as another recently decided case within this district, *County of Cook v. Bank of Am. Corp.*, 2015 U.S. Dist. LEXIS 34468 (N.D. Ill. Mar. 19, 2015). Similarly, in *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 2015 U.S. App. LEXIS 15444 (11th Cir. 2015), the Eleventh Circuit stated, "simply put, *Trafficante*, *Gladstone*,[5] and *Havens* have never been overruled, and the law of those cases is clear as a bell: '[statutory] standing under [the FHA, which authorizes "any aggrieved person" to bring a claim] extends "as broadly as is permitted by Article III of the Constitution."'" *City of Miami*, 800 F.3d, at __, 2015 U.S. App. LEXIS 15444, at *35.

Similar to the statutes involved in the cases cited above, § 227(b)(1) of the TCPA sets forth four (4) prohibitions for which any "person ***or entity***" is empowered to bring a private action against a defendant that violates the statute. *See* 47 U.S.C. § 227(b)(3) (emphasis added). Only two of the subsections within § 227(b)(1) specifically refer to a "residential" or "business" line. *See* 47 U.S.C. § 227(b)(1)(B) and § 227(b)(1)(D). The other two subsections refer to a call to "***any*** telephone number," 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), and "***a*** telephone facsimile machine," 47 U.S.C. § 227(b)(1)(D) (emphasis added). If Congress wanted to limit either of these two (2) subsections to apply only to consumers, it could have done so. Yet it did not.

The lone TCPA case that ARS cites for the proposition that a business is not within the "zone of interests" protected by § 227(b)(1)(A) is *Cellco P'ship v. Wilcrest Health Care Mgmt., Inc.*, 2012 U.S. Dist. LEXIS 64407 (D.N.J. May 8, 2012). That case, however, was based on the court's holding that "called party" is limited to the "intended recipient" of the call. *Id.* at *17-20.

---

[5] *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S. Ct. 1601 (1979).

According to the court, the plaintiff, a business, was not the "intended recipient" of the defendant's call and, therefore, was outside the TCPA's intended "zone of interests." *Id.*

The Seventh Circuit has rejected the *Wilcrest* position that a "called party" under the TCPA is limited to the "intended recipient" of the call.[6] *See Soppet,* 679 F.3d, at 641. Given this, the Court should not follow *Wilcrest's* "zone of interests" analysis.

The statutory provision that TSC alleges ARS violated in this case, 47 U.S.C. § 227(b)(1), is the same statutory provision on which State Attorneys General rely when bringing government actions against robocallers. *See* 47 U.S.C. § 227(f). For this reason, courts regularly observe that Congress has empowered individuals and entities to act as "private attorneys general to pursue claims for well defined statutory damages." *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 2015 U.S. App. LEXIS 14718, *7 (1st Cir. Aug. 21, 2015); *see also Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015); *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("[Plaintiff] has not been shy in taking on the role of a private attorney general under the [TCPA]. Since 1998, he has filed claims against at least twelve defendants in at least thirteen lawsuits under the Act.").

It does not matter whether a plaintiff actively seeks out opportunities to bring TCPA claims or is motivated by the significant damage awards available under the TCPA. *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008). In *Fitzhenry v. ADT Corporation*, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014), the defendants challenged the plaintiff's standing to bring TCPA claims against them, arguing that the plaintiff was a "professional plaintiff"

---

[6] In addition, the Third Circuit (in which the *Wilcrest* court sits) recently stated, "[t]here are good reasons to doubt the equation of 'intended recipient' with 'called party,' but the parties did not brief the issue, and we need not decide it here. *See Leyse v. Bank of Am., N.A.*, 2015 U.S. App. LEXIS 17840, 18 (3rd Cir. Oct. 14, 2015) (*citing Soppet*); *see also Cellco P'ship v. Plaza Resorts Inc.,* 2013 U.S. Dist. LEXIS 139337 (S.D. Fla. Sept. 27, 2013)(rejecting *Wilcrest* based on Eleventh Circuit's view that "called party" is subscriber).

who "pursues TCPA claims as a source of income." *Id. at* \*11. According to the defendants, "because Plaintiff welcomes telemarketing calls to support his TCPA business, he is not in the TCPA's zone of protection." *Id. at* \*12.

The *Fitzhenry* court rejected the defendants' argument, holding "Defendants have not cited any authority for the proposition that a professional plaintiff is outside the TCPA's statutory zone of interest. Although Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest." *Id.*

In this case, as in *Fitzhenry*, it does not matter that TSC has an enhanced ability to document illegal robocalls and enforce the TCPA against companies, like ARS, that place such calls. Because the TCPA authorizes ***any*** "person or entity" to seek out and bring claims to enforce that statute, the "zone of interest" is "expanded to the full extent permitted by Article III."

      **D.**     **TSC has not waived its right to bring the instant TCPA action against ARS.**

In its motion to dismiss, ARS argues that because TSC purchased telephone numbers with knowledge robocallers like ARS would place illegal robocalls to those numbers, TSC waived its right to bring a TCPA action against ARS. Waiver, however, is an affirmative defense that a defendant must plead and prove. *See Lincoln Gen. Ins. Co. v. Joseph T. Ryerson & Son, Inc.*, 2015 U.S. Dist. LEXIS 79273, \*6-7 (N.D. Ill. June 18, 2015). It is not the plaintiff's responsibility to "plead around" the waiver. *Id.*

Regardless, ARS miscosntrues the law in this area. The TCPA provides significant statutory damage awards to individuals and entities as an incentive for them to bring private actions to enforce the law. *See Chapman*, 747 F.3d, at 492. It follows, therefore, that a private citizen has no obligation to avoid illegal robocalls before filing a lawsuit based on the defendant's

15

knowing violation of the statute. *See Fitzhenry*, 2014 U.S. Dist. LEXIS 166243, at *12. As the Supreme Court held in *Havens Realty*, *supra*, a plaintiff may voluntarily interact with a business that is already engaged in wrongdoing in order to bring a claim that business to enforce the law. TSC's right of action against ARS did not occur until *after* TSC purchased the telephone numbers and ARS robocalled (or continued robocalling) those numbers without placing live verification calls to confirm whether TSC had consented to be called.

      E.      **TSC has sufficiently alleged that ARS placed calls to TSC numbers using an ATDS.**

As stated at the onset of this memorandum, Rule 8(a)(2) merely requires "a short and plain statement that 'give[s] the defendant fair notice of what the claim is and the grounds upon which it rests.' *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted)." *Kawczynski*, 2015 U.S. Dist. LEXIS 142878, *3-4 (St. Eve, J.). In this case, TSC alleges that ARS used equipment with "predictive dialer" capabilities, as defined by the FCC, and specifically described those capabilities. TSC also has investigated ARS's use of autodialer technology and highlighted in a factual allegation that ARS's use of that technology plays such a prominent role in ARS's business, that ARS boasts of its autodialer usage on its website. In addition, TSC provides numerous examples of days on which a single ARS telephone number dialed a single TSC telephone number up to sixteen (16) times in a single day. TSC also alleges that several weeks after ARS had been served with the original complaint, ARS was still calling individual TSC telephone numbers up to fifteen (15) times a day.

The above factual allegations suffice to give ARS fair notice as to the grounds for TSC's allegation that ARS used an ATDS, rather than a live agent, to call TSC's numbers.[7] ARS

---

[7] See *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010-1011 (N.D. Ill. Mar. 23, 2010) (J. St. Eve)(allegation that tracked statutory definition of ATDS sufficed to state a claim).

16

knows it used an autodialer to place calls to TSC's telephone numbers, yet it nitpicks the allegations in FAC in a disingenuous attempt to avoid the consequences of its illegal conduct. This is not a basis to dismiss TSC's complaint.[8]

### F. TSC has sufficiently alleged that ARS willfully and knowingly violated the TCPA.

The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3). The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015) *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011). Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31.

In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the

---

[8] "Word games where the defendant 'merely "attempts to nit-pick the complaint to death"'" [citation omitted] do not provide a basis to grant a motion to dismiss." *Harley-Davidson Fin. Servs., Inc. v. Bank of Am., N.A.*, 2006 U.S. Dist. LEXIS 101048, *7 (N.D. Ill. July 31, 2006) (Kennelly, J.)

subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 1316, 1322 (S.D. Fla 2012).

In this case, TSC alleges that ARS voluntarily placed illegal robocalls to the TSC telephone numbers using an ATDS without TSC's prior express consent. TSC also alleges that ARS failed to adequately place intermittent live verification calls to the TSC numbers to ensure that TSC had provided its express consent to ARS to call those telephone numbers. ARS placed thousands of robocalls to TSC, up to 16 times a day to a single number, for over a year and continued that practice even after ARS was served with the original complain. Had ARS placed live verification calls to any TSC number, it would have been able to determine that it was calling a telephone number for which it did not have express consent to call. ARS's failure to take the *de minimus* steps needed to ensure it had the consent of the current subscriber reflects a willful disregard of the TCPA. TSC should be permitted to conduct discovery to determine the full extent of ARS's willful violations.

## **CONCLUSION**

For the foregoing reasons, TSC respectfully asks this Court to deny ARS's Rule 12(b)(6) motion to dismiss.

                                            RESPECTFULLY SUBMITTED,

                                            Hyslip & Taylor, LLC LPA

Date: October 30, 2015              By:   */s/ David M. Menditto*
                                                          One of Plaintiff's Attorneys

David M. Menditto
Illinois Bar No. 6216541
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Telephone: (312) 380-6110
Facsimile: (312) 361-3509
Email: davidm@fairdebt411.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 30, 2015, I filed the foregoing Plaintiff's Memorandum in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss through the Court's electronic filing system and thereby served counsel of record as follows:

    Dara Chevlin Tarkowski
    Catherine A. Miller
    Julian Dayal
    Akerman LLP
    71 S. Wacker Drive
    46th Floor
    Chicago, IL 60606
    dara.tarkowski@akerman.com
    catherine.miller@akerman.com
    julian.dayal@akerman.com

                                                                  */s/ David M. Menditto*