**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TELEPHONE SCIENCE | ) | |
| CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15 C 5182 |
| | ) | |
| ASSET RECOVERY SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Telephone Science Corporation ("Telephone Science") filed its First Amended Complaint on August, 7, 2015, alleging that Defendant Asset Recovery Solutions, LLC ("Asset Recovery") violated the Telephone Consumer Protection Act, 42 U.S.C. § 227, *et seq.* ("TCPA") and did so, willfully and knowingly. (*See generally*, R.26.)

Before the Court is Asset Recovery's motion to stay all proceedings pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S.Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339). Specifically, Asset Recovery seeks a stay based on four reasons: (1) *Spokeo* will likely determine if Telephone Science has standing in this case, (2) the case is at its earliest stages with minimal discovery exchanged; (3) Asset Recovery will not incur any additional (alleged) harm from imposition of a stay; and (4) a stay, at this stage, will not prejudice Telephone Science. (*See* R.24.) For the following reasons, the Court grants Asset Recovery's motion.

**BACKGROUND**

## I.     Robocalls & Telephone Science's "Nomorobo" Service

Telephone Science operates a service called "Nomorobo", designed to help consumers avoid incoming computerized telephone calls that the Federal Trade Commission refers to as "robocalls"—calls in which the caller uses a recorded or automated voice.  (R.26, ¶¶ 5, 6.)  Asset Recovery is an asset recovery management and debt purchasing company that uses a "predictive dialer" in connection with its business.  (*Id.*, ¶¶ 14, 16.)  A "predictive dialer" is "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  (*Id.*, ¶ 17.)

## II.     The Alleged TCPA Violations & Incurred Expenses

Telephone Science alleges that Asset Recovery used a predictive dialer to place calls to phone numbers to which Telephone Science subscribes.  (*Id.*, ¶¶ 18, 19.)  Telephone Science further alleges that Asset Recovery made these calls without Telephone Science's consent and that Telephone Science incurred per-minute charges for the answered calls.  (*Id.*, ¶¶ 24-27, 44.)  A voice over Internet protocol ("VoIP") telephone service assessed the per-minute charges to the assigned Telephone Science's phone numbers.  (*Id.*, ¶¶ 25, 26.)  According to the founder of Telephone Science, Aaron Foss, Telephone Science pays a per minute charge of $0.0075 for each inbound call and Asset Recovery made approximately 11,944 calls to Telephone Science phone numbers.  (*See* R.32-2, Foss. Decl. ¶¶ 6, 10.)[1]  Telephone Science answered 450 of those

---

[1] In considering the parties' arguments related to Asset Recovery's motion to stay based on factual issues surrounding standing, the Court is permitted to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443

calls, resulting in Telephone Science "incurring per minute charges in the amount of $3.38." (R.32-2, ¶¶ 10, 11.)[2]

Based on the alleged calls, Telephone Science has brought one count for negligent violation of the TCPA, 47 U.S.C. § 227(b)(1)(A), and a second count for willful and knowing violation of the TCPA, 47 U.S.C. § 227(b)(3). (R.26, ¶¶ 53, 63.) Telephone Science seeks injunctive relief to prevent Asset Recovery from placing further telephone calls to Telephone Science phone numbers, and a judgment against Asset Recovery for statutory damages for each and every call made to Asset Recovery in violation of the TCPA. (*Id.*, ¶ 65.)

## III.    Standing & the Anticipated Decision in *Spokeo*

To establish Article III standing, a plaintiff must demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010). "Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)); *cf. Summers v. Earth Island Inst.,* 555 U.S. 488, 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

---

(7th Cir. 2009); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (explaining that standing is "not [a] mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation").

[2] As Asset Recovery contends, this computes out to each call lasting, on average, one minute or less (450 x 0.0075 = 3.38). (*See* R.33, at 4.)

In *Robins v. Spokeo, Inc.*, the plaintiff consumer alleged that the defendant operated its website in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. *Robins v. Spokeo, Inc.*, No. CV10-05306 ODW(AGRX), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) *reinstatement granted*, No. CV10-05306 ODW AGRX, 2011 WL 11562151 (C.D. Cal. Sept. 19, 2011). Specifically, the plaintiff claimed "that reports generated by Spokeo.com contain inaccurate consumer information that is marketed to entities performing background checks." *Id.* The plaintiff alleged concerns that this inaccurate information could adversely affect "his ability to obtain credit, employment, insurance and the like". *Id.* The district court found the plaintiff's bare allegations regarding the statutory violation insufficient to satisfy the injury-in-fact requirement for constitutional standing. *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 410-11 (9th Cir. 2014). The Ninth Circuit reversed the district court, holding that the plaintiff consumer adequately alleged injury-in-fact to confer constitutional standing. *Id.*, at 413-14. Specifically, the Ninth Circuit held that "the interests protected by the statutory rights at issue are sufficiently concrete and particularized that Congress can elevate them." *Id.* The Supreme Court granted the defendant's petition for a writ of certiorari, *Spokeo, Inc. v. Robins*, 135 S.Ct. 1892 (2015), with the question presented as "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." (R.24-3, Ex. A, Grant of Writ of Certiorari). The Supreme Court heard oral argument in *Spokeo* on November 2, 2015. (*See Spokeo, Inc. v. Robins*, No. 13-1339, Docket for 13-1339, available at www.supremecourt.gov.)

**LEGAL STANDARD**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.,* 410 F.3d 964, 980 (7th Cir. 2005) (*citing, inter alia, Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).  In determining whether to grant a motion to stay, courts typically consider three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court.  *See e.g., Conrad v. Boiron, Inc.*, No. 13 C 7903, 2014 WL 2937021, at *3 (N.D. Ill. June 30, 2014). Because the second and third factor are similar, courts can often analyze them together.  *See id.*

**ANALYSIS**

**I.      A Stay Will Simplify the Issues and Reduce the Burden of Litigation on the Parties and the Court**

Under the TCPA, a party is prohibited from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone[.]"  *Powell v. W. Asset Mgmt., Inc.*, 773 F. Supp. 2d 761, 763 (N.D. Ill. 2011) (citing 47 U.S.C. § 227(b)(1)(A)(iii)).  The TCPA creates a private right of action in which a person may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* (*citing* 47 U.S.C. § 227(b)(3)(B).

According to Asset Recovery, the Supreme Court's decision in *Spokeo* may be the "ultimate case streamliner", if the Supreme Court rules that a bare statutory violation is not

enough to confer Article III standing.  (*See* R.24-1, at 4.)  Although *Spokeo* is an FCRA case, at least six district courts have granted *Spokeo*-based stays in cases alleging violations of the TCPA.[3]  *See Boise v. ACE USA, Inc.*, No. 15-Civ-21264, 2015 WL 4077433, at *5 (S.D. Fla. July 6, 2015); *Williams v. Elephant Ins. Co.*, No. 1:15-00119, 2015 WL 3631691, at *1 (E.D. Va. May 27, 2015); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCx), 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015); *Telephone Science Corp. v. Hilton Grand Vacations Co., LLC*, No. 6:15-cv-969-Orl-41DAB, at *3 (M.D. Fla Nov. 23, 2015); *Luster v. Sterling Jewelers*, No. 1:15-cv-2854-WSD, 2015 WL 9255553, at *3 (N.D.Ga. Dec. 17, 2015); *Acton v. Intellectual Capital Mgmt.*, No. 15-CV-4004(JS)(ARL), 2015 WL 9462110, at *2-3 (E.D.N.Y. Dec. 28, 2015).

Telephone Science responds that *Spokeo* is "wholly inapplicable", but proceeds to argue on the merits in a manner that factually distinguishes *Spokeo* from the present litigation.  (*See* R.32, at 7-14.)  While the Court recognizes that factual differences may exist between the present case and *Spokeo*, Telephone Science's detailed analysis arguing the merits of whether its allegations satisfy the requirement of injury-in-fact for constitutional standing only serves to highlight the intertwined legal issues between these two cases.  Indeed, should the Supreme Court find that a plaintiff must incur an injury-in-fact in addition to alleging a mere statutory

_____

[3] Similarly, district courts have granted *Spokeo*-based stays in cases alleging violations of the FCRA.  *See e.g., Hillson v. Kelly Servs., Inc.*, No. 2:15-10803, 2015 WL 4488493, at *1 (E.D. Mich. July 15, 2015) ("The Court finds that a stay is warranted, *inter alia*, because *Spokeo* has the high potential to be completely dispositive of the instant case and because judicial economy favors a limited delay in awaiting the *Spokeo* decision"); *see also Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 WL 3945052, at *1 (N.D. Cal. June 26, 2015); *Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV-00711-MCE, 2015 WL 4602968, at *1 (E.D. Cal. July 29, 2015).  Indeed, Telephone Science cites eleven cases in a table attached to their opposition brief entitled "Rulings on Motions to Stay based on *Spokeo*", summarizing district court decisions which shows that courts have granted 9 of the 11 motions to stay in the group of FCRA, TCPA and FCDPA litigations, albeit 2 of the 9 motions were unopposed.  (*See* R.32-5, Ex. E.)

violation, the potential exists for a significant reduction in the number of calls forming the basis of Telephone Science's claims in the present litigation. (*See* R.33, at 8-9 (arguing that ~96% of the alleged 11,944 calls could drop from the present litigation depending on the *Spokeo* outcome).) Specifically, Telephone Science asserts that its allegations are distinguishable from *Spokeo* because it has alleged TCPA violations in the form of out-of-pocket expenses generated by per-minute charges for answered calls. (*See* R.32, at 6.) According to Telephone Science, these "out-of-pocket expenses satisfy the injury-in-fact and causation requirements of Article III of the United States constitution". (R.26, ¶ 45.)

This argument is unpersuasive for the purposes of determining whether a stay in light of *Spokeo* is appropriate, however, because the allegations are not limited to those calls that generated the alleged monetary damage. According to Mr. Aaron Foss, founder of Telephone Science, the "*answered* calls resulted in [Telephone Science] incurring per minute charges in the amount of $3.38." (R.32-2, Foss Decl., ¶ 12.) Mr. Foss further provides that the number of calls *answered* differs from the number of calls *received* by Asset Recovery. (*See e.g.,* R.32-2, ¶¶ 8-11; *see also* R.26, ¶ 34 (alleging Asset Recovery *placed* approximately 11,900 calls to Telephone Science phone numbers) (emphasis added).) Telephone Science has provided additional information that indicates that Asset Recovery incurs the out-of-pocket expenses for the calls that it answers and that it only answered a subset of the Telephone Science calls—and, relatedly, only generated out-of-pocket expenses for a subset of the calls received. (*See* R.32-2, Foss Decl., ¶¶ 11, 12 (providing the number of calls *answered* by Asset Recovery and the expenses incurred by those *answered* calls).)

The allegations forming the basis of Asset Recovery's alleged violation, however, are not limited to the *answered* calls that generate out-of-pocket expenses. Instead, the allegations refer

to all the calls that Telephone Science *received* from Asset Recovery. (*See e.g.,* R.26, ¶ 44 (alleging Telephone Science "incurred out-of-pocket expenses in the form of per-minute charges as a direct and proximate result of the calls [Asset Recovery] *placed* to" Telephone Science) (emphasis added); *id.*, ¶ 65 (Prayer for Relief requesting "Judgment against [Asset Recovery] for statutory damages … for *each and every call [Asset Recovery] made* in violation of the TCPA") (emphasis added); *id.*, ¶ 13 ("Only ARS's calls to telephone numbers in the TSC "honeypot" are at issue in this case"); R.32, at 10 (arguing that Telephone Science "seeks to recover damages under the TCPA for each robocall [Asset Recovery] *placed to* a [Telephone Science] VoIP telephone number in violation of the Act") (emphasis added).) Indeed, Telephone Science seeks to not only recover damages for Asset Recovery's alleged violation of the TCPA by the robocalls, but further seeks treble damages on the basis of a willful and knowing violation for Asset Recovery's "voluntarily *placed* telephone calls" to Telephone Science. (*See* R.26, ¶ 59 (emphasis added).)

The pursuit of damages based on all calls that Asset Recovery *placed or made* to Telephone Science, as opposed to all calls Telephone Science *answered,* means that the calls forming the basis of the allegations are not limited to those for which Telephone Science generated out-of-pocket expenses. Of the 11,944 calls received, if only 450 of those calls resulted in monetary damage to establish injury in fact and *Spokeo* determines that more than a mere statutory violation is needed, Telephone Science likely cannot bootstrap that standing requirement onto each and every call for which it seeks relief. *See David v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (explaining that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought"). To the extent that *Spokeo* provides guidance for any differentiation between the categories of calls—answered

versus placed—implications regarding Telephone Science's standing arise.[4]  The *Spokeo* decision may also result in significantly less discovery if it limits the type or number of calls for which Telephone Science can seek damages.  A stay will serve a useful purpose, therefore, to advance this litigation by promoting efficiency and economy for the proper basis of the allegations and claims that may proceed into discovery.

Telephone Science has made similar allegations to those here in another case, *Telephone Science Corp. v. Hilton Grand Vacations Co, LLC*, wherein the district court granted the defendant's motion for stay pending the Supreme Court's decision in *Spokeo*.  *See Telephone Science Corp. v. Hilton Grand Vacations Co., LLC*, No. 6:15-cv-969-Orl-41DAB, 2015 WL 7444409, at *3 (M.D. Fla. Nov. 20, 2015) ("*Hilton*").  As recounted by the district court in *Hilton*, Telephone Science asserted that its allegations of out-of-pocket expenses form a sufficient basis for an injury-in-fact under the constitutional standing inquiry.  *Id.*, at *2.  The district court rejected this argument, however, finding that even if "the alleged out-of-pocket expenses confer standing to challenge the expense-inducing calls, such a result would say nothing about whether standing exists to challenge the expense-free calls."  *Id.* (*citing Davis*, 554 U.S. at 734 (2008)).  Similar to the First Amended Complaint here, the amended complaint in *Hilton*, did not distinguish between the two categories of calls as it made broad assertions that "Telephone Science incurred out-of-pocket expenses in the form of per-minute charges as a direct and proximate result of the calls Hilton placed."  *Hilton*, 2015 WL 7444409, at *2, n.4.  The same broad assertion is made here.  (*See* R.26, ¶ 44.)

---

[4] The Court's ruling does not provide any opinions regarding whether the allegations or claims surrounding the calls Telephone Science received, as opposed to the calls that Telephone Science answered, are sufficient to satisfy the injury-in-fact requirement to confer constitutional standing.

Accordingly, the Court finds that this litigation will be streamlined and the burden of litigation reduced on the parties and the Court by imposition of a stay.

## II.     A Stay Will Not Unduly Prejudice or Tactically Disadvantage Telephone Science

Furthermore, a stay will not unduly prejudice or tactically disadvantage Telephone Science.  Asset Recovery contends that Telephone Science will not be prejudiced by a stay in this case for at least four reasons: (1) no present or future injuries will result if Telephone Science receives more calls; (2) the case is at an early stage; (3) Telephone Science's delay in suing Asset Recovery counsels against any prejudice; and (4) the Supreme Court's *Spokeo* decision is likely to issue before any final, non-appealable judgment issues in this case.  (R.24-1, at 7-8.)  As Asset Recovery's first argument is primarily legal in tone, Telephone Science challenges the notion, but does not disagree that the case is at an early stage or that a *Spokeo* decision is likely to issue before a final decision in this case.  Telephone Science mainly contests whether its alleged delay in pursuing the litigation counsels against prejudice.  The Court, however, does not need to consider this argument as Telephone Science has not provided a basis upon which the Court can find that it would suffer prejudice by imposition of a stay in this litigation.

The parties agree that this case is in its early stages, which equates to a potential for significant savings for both parties in terms of their time, expenses, and resources required to move forward with this litigation.  *See e.g., Boise*, 2015 WL 4077433, at *5 (concluding that "the significant time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules [] that plaintiffs [] lack Article II standing …").  Furthermore, it is particularly evident that a stay in this litigation will not prejudice the parties as the Supreme Court has already heard oral argument in *Spokeo* and likely will issue a decision at the latest, by the end of its term in June of this year, resulting in, at most, a five to six-month delay in this

10

litigation. *See e.g., Boise*, 2015 WL 4077433, at *6 (granting stay of a 2015 TCPA case in light of *Spokeo* because "a decision is imminent within a year"). To the contrary, both parties suffer harm by the burdens of potentially superfluous litigation. *See id.* Based on these reasons, the Court finds that Telephone Science will not be prejudiced or tactically disadvantaged by imposition of a stay.

Accordingly, the Court grants Asset Recovery's motion because issuance of a stay at this stage is the most prudent approach and will not prejudice Telephone Science, but will allow the case to proceed with the directly applicable guidance of the Supreme Court, serving to streamline the issues and reduce the potential burdens of litigation on the parties and the Court.[5]

## CONCLUSION

For these reasons, the Court grants Asset Recovery's motion and stays all proceedings pending resolution by the Supreme Court of *Spokeo*.

**DATED: January 5, 2016**

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge

---

[5] Furthermore, issuance of a stay in light of *Spokeo*, may serve to streamline issues presented in a pending motion to dismiss based on jurisdictional issues under Rule 12(b)(1). (*See* R.47; *see also* R.69, Asset Recovery's Suppl. Brief in Support of its Motion to Dismiss Under Rule 12(b)(1) (arguing that the *Hilton* decision to stay a TCPA violation case based on *Spokeo* deals with "injury-in-fact" analysis applicable to Asset Recovery's Rule 12(b)(1) motion to dismiss).) As stated before the Court, both parties admitted that the jurisdictional issues of Asset Recovery's pending motion to dismiss are related to the issues being addressed in *Spokeo*. (*See* R.32-3, at 6:18-20 ((Telephone Science's counsel) Mr. Lavery: "You Honor, it's the same issue. The motion to stay is based on the 12(b)(1) jurisdictional theory. There's this case – are you familiar with Robins v. Spokeo?"); *id.*, at 7:8-11 (Asset Recovery's counsel) (Ms. Miller: In connection with the 12(b)(1). The Spokeo issue is a little bit different than the 12(b)(1) jurisdictional issue"); *id.*, at 7:21-24 (Ms. Miller: "I appreciate counsel's representation. The issue with Spokeo is the Article III standing based on failure to establish any actionable harm. I think that the 12(b)(1) goes beyond that").)

11