IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TELEPHONE SCIENCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 15-CV-5182 |
| ASSET RECOVERY SOLUTIONS, LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The Court previously granted Defendant Asset Recovery Solutions, LLC's ("ARS") Rule 12(b)(6) motion to dismiss the Second Amended Complaint of Plaintiff Telephone Science Corporation ("TSC"), with prejudice, for failure to satisfy the "zone-of-interests" test under 47 U.S.C. § 227(b), the Telephone Consumer Protection Act ("TCPA"). (R.127, the "Opinion")).[1] The Court entered judgment on the basis of the Opinion. (R.128). TSC now moves the Court for an order: (i) altering its Opinion to dismiss the Second Amended Complaint without prejudice pursuant to Federal Rule of Civil Procedure 59(e); and (ii) granting TSC leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). (R.129). For the reasons set forth below, the Court denies TSC's motion.

---

[1] In addition, the Court denied ARS' Rule 12(b)(1) motion to dismiss for lack of Article III standing, and denied as moot ARS' Rule 15 motion to strike 297 claims added without leave of the Court. (*Id.*). TSC misreads the Opinion in arguing that "the Court rejected virtually every argument advanced by ARS in its Rule 12(b)(6) motion to dismiss" apart from its "zone of interests" argument. (R.138, Reply Br. at 3). To the contrary, the Court explicitly stated that it did not reach opinion on ARS' remaining arguments in favor of Rule 12(b)(6) dismissal. (R.127, Opinion at 14, 33).

**BACKGROUND**

The Court assumes familiarity with the factual and procedural background of this action as set forth in detail in the Opinion, and does not recite it here. For purposes of analyzing the present motion, however, the Court recites the following facts.

**I.      The Nomorobo Call-Blocking Service**

TSC operates a service called "Nomorobo," designed to help consumers avoid incoming computerized telephone calls known as "robocalls" – calls made with either an automatic telephone dialing system ("ATDS") or with a prerecorded or artificial voice. (R.129-3, Proposed Third Am. Compl. ¶¶ 5-6). To date, Nomorobo has helped consumers "avoid over 122 million unwanted robocalls." (*Id.* ¶ 9). "In order to provide the Nomorobo service to consumers, TSC maintains a 'honeypot' group of telephone numbers, from which TSC is able to gather data related to inbound calls." (*Id.* ¶ 10). Nomorobo analyzes calls placed to TSC's honeypot numbers using a specialized algorithm, enabling it to "detect high frequency robocalling patterns and distinguish between calls placed by robocallers and calls placed by non-robocallers." (*Id.* ¶ 14). Then, using simultaneous ring technology, Nomorobo either blocks or allows an end-user call based on its data analysis. (R.127, Opinion at 2). Individuals and businesses subscribe to Nomorobo's call-blocking services for a fee. (*Id.*).

According to TSC, around March 2014, ARS began calling telephone numbers in the TSC honeypot ("TSC Numbers") using a predictive dialer. (R.129-3, Proposed Third Am. Compl. ¶¶ 31-37). "Each TSC Number is assigned to a voice over Internet protocol ("VoIP") telephone service that assesses a monthly per-line charge for each TSC Number." (*Id.* ¶ 40). The VoIP service provider, Twilio, Inc. ("Twilio"), also assesses a per-minute charge for each inbound call that TSC answers. (*Id.* ¶ 41). TSC alleged that, between March 2014 and February

2016, ARS placed approximately 12,240 robocalls to TSC Numbers – 747 of which TSC answered. (*Id.* ¶¶ 49-53). TSC, thus, sought relief under the TCPA "based on past and future ARS robocalls to TSC Numbers, which TSC answered (or will answer) and for which TSC has incurred (or will incur) per-minute charges." (R.129-3, Proposed Third Am. Compl. ¶ 54). In particular, TSC brought suit under 47 U.S.C. § 227(b)(1)(A)(iii), alleging that "ARS violated [this provision] on multiple and separate occasions by using an ATDS to call TSC at a telephone number assigned to a service for which TSC is charged for the call without TSC's prior express consent." (*Id.* ¶ 82).

## II. The Opinion

The Opinion, in relevant part, analyzed whether TSC's interests fell within Section 227(b)'s protected zone of interests, entitling TSC to pursue its claims as a matter of statutory standing. (R.127, Opinion at 14-33). In conducting this analysis, the Court first examined Supreme Court precedent, including *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), to conclude that the zone-of-interest limitation applied to the TCPA. (*Id.* at 15-19). This conclusion negated TSC's related arguments that (i) statutory standing under the TCPA was commensurate with Article III standing, and (ii) the TCPA contemplated generalized "citizen-suit" protection. (*Id.*). The Court then turned to the task of (i) discerning the interests sought to be protected by the statute at issue, and (ii) inquiring whether TSC's interests were among them. (*Id.* at 20-33 (citing *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 492 (1998); *Air Courier Conference of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 524 (1991)).

After reviewing the statutory text and explicit Congressional findings, as reinforced by legislative history and FCC interpretation, the Court read 47 U.S.C. § 227(b)(1)(A)(iii) "as

3

guarding against the receipt of, and payment for, unwelcome robocalls[,]" particularly those which "threaten public safety and inappropriately shift marketing costs from sellers to consumers." (*Id.* at 21, 33). Ultimately, after reviewing the related provisions of Section 227(b)—including 47 U.S.C. §§ 227(b)(2)(C) (recognizing "the interest of the privacy rights this section is intended to protect")—the Court discerned "several interests protected under 47 U.S.C. § 227(b)(1)(A)(iii), including individual privacy rights, public safety interests, and interstate commerce." (*Id.* at 22-25).

The Court then held that TSC's interests fell outside of this zone of interests. (*Id.* at 25-33). In particular, the Court observed that "the sole reason TSC subscribes to 'thousands' of honeypot numbers is to gather a 'large quantity' of data in order to 'detect high frequency robocalling patterns' and to 'distinguish' between callers for its Nomorobo customer-service offerings." (*Id.* at 29). Thus, "instead of being 'unwanted and unwelcome,' robocalls to TSC Numbers provide[d] the analytical basis on which the Nomorobo service operates." (*Id.*). In addition, TSC's alleged damages—that is, the monetary harm it suffered when it began to answer known robocalls—were "not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA, but rather [were] indirect, economic, and inherent to [its] business." (*Id.* at 29-30 (citing *Cellco P'Ship v. Wilcrest Health Care Mgmt.*, No. CIV.A. 09-3534 MLC, 2012 WL 1638056, at *8-9 (D.N.J. May 8, 2012)). Moreover, "even after amending its complaint twice, TSC d[id] not explain how ARS robocalls to *its* honeypot numbers—as opposed to its customers' numbers—threaten public safety or impede interstate commerce." (*Id.* at 30-31). In so holding, the Court largely agreed with ARS' argument that Section 227(b)(1)(A)(iii) does not protect a telecommunications service provider interested in

4

commercial data collection. (*Id.* at 15, 26 (citing R.85, Rule 12(b)(6) Opening Br. at 6-10 (citing *Lexmark* and *Cellco*)).

Prior to its March 2016 dismissal motion, ARS had made this argument in two previous Rule 12(b)(6) motions – one filed in August 2015, and another filed in October 2015. (R.17-1, August 2015 Opening Br. at 3-6 (citing *Lexmark* and *Cellco*); R.46, October 2015 Opening Br. at 6-9 (citing *Lexmark* and *Cellco*)). Within two days of the initial filing, TSC had filed an amended complaint "intended to address some of the deficiencies that [ARS] alleged existed in the complaint." (R.43-1, August 2015 Hearing Tr. at 2-3; R.26; R.27 ("By filing a first amended complaint, Plaintiff seeks to amicably address the alleged pleading deficiencies that Defendant identified in its recently filed motion to stay and motion to dismiss")). Accordingly, the Court denied the Rule 12(b)(6) motion as moot. (R.28). Following limited jurisdictional discovery, ARS renewed its Rule 12(b)(6) motion as to the amended complaint, and filed a Rule 12(b)(1) motion. (R.45, R.47). With respect to ARS' recycled argument on statutory standing, TSC did not address either *Lexmark* or *Cellco* in any substance. (R.52, October 2015 Response Br.).[2] Before reaching a disposition on this motion, however, the Court granted ARS' pending motion to stay the proceedings pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S.Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339). (R.70). In light of the stay, the Court dismissed ARS' pending Rule 12 motions without prejudice to refile after having the Supreme Court's guidance in *Spokeo*. (*Id.*). Thereafter, TSC moved the Court "to enter an order lifting the stay in this case, granting TSC leave to drop with prejudice its

---

[2] In particular, TSC made no mention of *Lexmark*, and misread *Cellco* to argue, "According to [that] court, the plaintiff, a business, was not the 'intended recipient' of the defendant's call and, therefore, was outside the TCPA's intended 'zone of interests.'" (R.52, Response Br. at 13-14). To the contrary, the *Cellco* court recognized that, even construing Verizon and OnStar as the "called party" under the TCPA, "it is clear from an examination of the legislative history and case law interpreting the TCPA that Plaintiffs do not fall within the zone of interests protected by the statute for purposes of prudential standing." *See Cellco*, 2012 WL 1638056, at *6-7.

5

claims based on unanswered calls[.]" (R.72). The Court granted TSC's motion, ordering TSC to file an amended complaint. (R.75; *see also* R.93-1, Jan. 2016 Hearing Tr. at 4). On February 9, 2016, TSC filed its Second Amended Complaint (R.77), which—upon motion—the Court dismissed with prejudice. (R.84, R.127).

### III. TSC's Supplemental Allegations

TSC now seeks the opportunity to cure the deficiencies identified in the Opinion. In particular, TSC offers the following supplemental allegations by way of a Proposed Third Amended Complaint, as supported by the declaration of TSC's founder, Aaron Foss:

1. When TSC initially acquires telephone numbers for the TSC "honeypot," the numbers are considered "dirty," meaning they already are receiving calls from various sources, including robocallers and non-robocallers. (R.129-3, Proposed Third Am. Compl. ¶ 12)

2. "Over time, the Nomorobo service results in the 'dirty' numbers becoming 'cleansed,' meaning they are no longer receiving calls from robocallers and non-robocallers." (*Id.* ¶ 16)

3. TSC is able to return the "clean" numbers to Twilio, "or otherwise release them, for use by the public." (*Id.* ¶ 17)

4. Upon doing so, TSC no longer pays a monthly per-line service charge for the "clean" number released by TSC. (*Id.* ¶ 19)

5. Once TSC has identified a telephone number as one that is placing robocalls to numbers in the TSC "honeypot," TSC no longer needs to gather data from continued calls by that number. Instead, continued calls from these numbers "are unwanted and a nuisance, as they prevent the TSC telephone numbers from becoming 'cleansed.'" (*Id.* ¶¶ 21-22)

6. Such continued calls adversely affect TSC's business interests in acquiring new telephone numbers for its "honeypot." These calls also adversely affect TSC's ability to return "clean" telephone numbers to Twilio "or [to] otherwise release them for use by the public" and, therefore, adversely affect interstate commerce. (*Id.* ¶¶ 23-26).

7. Each ARS robocall at issue "was placed after TSC had identified the ARS telephone number was one from which robocalls were being placed." Thus, each one "was unwanted and a nuisance because TSC had no need to gather data from that call, and

> the call contributed to the TSC telephone number(s) remaining 'dirty.'" (*Id.* ¶¶ 56-57).

Another court in this District has described TSC's business model as follows:

> Twilio places all numbers that it purchases from larger phone companies into a virtual "holding tank," where the number of calls to that number is recorded for a period of time prior to assigning any number to a customer. Twilio wants to only assign phone numbers that are not receiving a lot of calls to their customers. Numbers that do not receive any calls during the period of time in the "holding tank" are considered "clean" and are assigned to Twilio's customers. Numbers that receive a lot of calls during the time period in the "holding tank" are considered "dirty" and are not assigned to Twilio's customers. TSC buys Twilio's "dirty" phone numbers for use in its honeypot. TSC uses proprietary algorithms and source code to operate Nomorobo and its honeypot. TSC analyzes its honeypot in order to detect high frequency robocalling patterns.

*See Telephone Sci. Corp. v. Trading Advantage*, 1:14-cv-04369, Dkt. No. 81 (Feb. 17, 2015) (Martin, J.) (citing R.72-2 ("Disclosure with Respect to Subject Phone Numbers Subscribed to by Telephone Science Corporation")); *see also* R.85, Rule 12(b)(6) Opening Br. at 2-3 (noting the same)).

## LEGAL STANDARD

Rule 59(e) permits parties to file, within twenty-eight days of the entry of judgment, a motion to alter or amend the judgment. *See* Fed.R.Civ.P. 59(e). Motions under Rule 59(e) serve the limited function of allowing the Court to correct manifest errors of law or fact or to consider newly discovered material evidence. *See Burritt v. Ditlefsen*, 807 F.3d 239, 252-53 (7th Cir. 2015). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures" or "to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation omitted). District courts have broad discretion in determining Rule 59(e) motions. *See Burritt*, 807 F.3d at 253.

If a district court "enter[s] judgment prematurely at the same time it dismisses the complaint that would be amended," it must "still provide some reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend" under Rule 15(a)(2). *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 522 (7th Cir. 2015). In the Seventh Circuit, a "liberal policy of amendment" applies with respect to motions for leave to amend filed after a "premature" entry of judgment. *Id.* at 520-21. "Generally, denials of leave to amend are reviewed for abuse of discretion. But when the basis for denial is futility, [courts] apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Id.* at 524.

## ANALYSIS

### I.     The Entry of Judgment

During the course of this litigation, TSC filed an amended complaint intended to address the "alleged pleading deficiencies that [ARS] identified" in its initial Rule 12(b)(6) motion to dismiss. (R.27). TSC then filed two briefs responding to ARS' subsequent Rule 12(b)(6) motions to dismiss. (R.95, R.52). Having taken TSC at its word that the Second Amended Complaint was "a detailed pleading that outlines the nature of TSC's business," (R.95, Response Br. at 5), the Court drew all reasonable inferences in TSC's favor and held TSC outside of Section 227(b)'s zone of interests, dismissing the Second Amended Complaint with prejudice. (R.127). In other words, the disposition (with prejudice) accorded with the "federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities[.]" *Runnion*, 786 F.3d at 520 (citation omitted). In addition, in neither response brief did TSC request another opportunity to amend, or suggest how it would amend to establish statutory standing under the TCPA. (R.95, R.52). *See Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798,

8

808 (7th Cir. 2010) (affirming Rule 12(b)(6) dismissal with prejudice where the plaintiff "ha[d] not suggested any way that she might amend her pleading to cure the deficiency"); *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015) (affirming Rule 12(b)(6) dismissal with prejudice and noting, "if [plaintiff] needed to establish certain facts as grounds for relief, it should have alleged those facts in its complaint or at least asserted them in opposing dismissal in the district court").

TSC now argues that—based on (i) another court's decision in *Telephone Science Corporation v. Trading Advantage*, 1:14-cv-04369, 2015 WL 672266 (N.D. Ill. Feb. 17, 2015), and (ii) its belief that standing under the TCPA was "expanded to the full extent permitted by Article III"—it "reasonably believed . . . that the allegations in the [Second Amended Complaint] sufficed to establish statutory standing in this case." (R.138, Reply Br. at 10-14). The relatively short *Trading Advantage* decision, however, did not purport to conduct a fulsome "zone of interests" analysis with respect to TSC's standing under Section 227(b)(1)(A)(iii). *See* 2015 WL 672266, at *1; *see also Nat'l Credit Union*, 522 U.S. at 492 (setting forth the "zone of interests" test). In addition, TSC's consistent failure to address *Lexmark* throughout several rounds of briefing belies the suggestion that TSC "reasonably" believed statutory standing to be commensurate with Article III standing. *See Lexmark*, 134 S. Ct. 1388-90 (cautioning against a literal reading of "any person" and noting the "unlikelihood that Congress meant to allow all factually injured plaintiffs to recover").

The Court recognizes, however, that the Opinion constituted its first decision on ARS' "zone of interests" challenge. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807-09 (7th Cir. 2015), *reh'g denied* (Aug. 3, 2015). Accordingly, the Court addresses TSC's post-judgment request for leave to amend under Rule 15(a)(2). *See Runnion*, 786 F.3d at 523 ("a plaintiff who

9

receives a Rule 12(b)(6) motion and who has good reason to think the complaint is sufficient may also choose to stand on the complaint and insist on a decision without losing the benefit of the well-established liberal standard for amendment with leave of court under Rule 15(a)(2)").

## II. TSC's Proposed Amendment

TSC now alleges that the ARS robocalls at issue in this case "serve no useful purpose to TSC and are, therefore, unwanted and a nuisance. The continued calls also have an adverse effect on TSC's business and interstate commerce in general." (R.138, Reply Br. Br. at 16). Ultimately, even accepting these allegations as true and drawing all reasonable inferences in TSC's favor, *see Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), TSC—a telecommunications service provider interested in commercial data collection for its customer-service offerings—does not fall "within the class of plaintiffs whom Congress has authorized to sue" under the TCPA. *See Lexmark*, 134 S. Ct. at 1387.

TSC's supplemental allegations do not change the Court's prior recognition that the "only reason for this volume of calls . . . is due to the nature of TSC's business, which is providing telecommunications services rather than consuming them." (R.127, Opinion at 29 (citing *Cellco*, 2012 WL 1638056 at *9)). In other words, TSC's "nuisance" theory—that ARS robocalls became a "nuisance" after they no longer provided "fresh data" to optimize the Nomorobo service—does not alter the reality that TSC used the TSC Numbers as a telecommunications service provider, rather than a "consumer." *See MCI Commc'ns Servs., Inc. v. 1st United Telecom, Inc.*, No. 3:10-CV-2255-B, 2012 WL 12884830, at *2-3 (N.D. Tex. Nov. 15, 2012) (finding that a telecommunications carrier lacked standing to bring a TCPA claim even where it was also the consumer of the phone lines in dispute, and used such lines for "customer services, technical support, [and] conference bridge calls"). On this point, TSC's "nuisance" theory is a

far cry from its supplemental authorities. *See Morris v. Unitedhealthcare Ins. Co.*, No. 415CV00638ALMCAN, 2016 WL 7115973, at *5 (E.D. Tex. Nov. 9, 2016), *report and recommendation adopted*, No. 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016) (individual plaintiff became "annoyed, disturbed, bothered . . . [when he] receive[d] unwanted calls on a number [he has] taken steps to prevent getting calls at," and such calls "disrupted [his] sleep and . . . affected [his] job performance later in the day"); *Evans v. Nat'l Auto Div., L.L.C.*, No. CV 15-8714, 2016 WL 4770033, at *3 (D.N.J. Sept. 13, 2016) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA"). Relatedly, TSC has set forth no allegations concerning or supporting an invasion of privacy or a risk to public safety. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1050 (7th Cir. 2013) (recognizing "Congress's goal to protect the privacy of citizens against unsolicited telephone calls"); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("the purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [ATDS] to communicate with others by telephone in a manner that would be an invasion of privacy") (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)) (analyzing § 227(b)(1)(A)(iii)); *see also* TELEPHONE CONSUMER PROTECTION ACT OF 1991, Pub. L. No. 102–243, 105 Stat 2394, § 2 ¶¶ 5, 14 (December 20, 1991); S. REP. NO. 102-178 at 5, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972-73 (1991); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003).

Furthermore, as the Court previously held, TSC's alleged damages—the per-minute charges it incurred when it began to answer known robocalls in May 2015—"are not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the

TCPA, but rather are indirect, economic, and inherent to [its] business." (R.127, Opinion at 29-30 (citing *Cellco*, 2012 WL 1638056 at *8)). TSC's clarification that it only answered "unwelcome" robocalls—*i.e.*, those that once did, but no longer do, provide useful data for its business algorithm—does not result in a different outcome. In other words, although TSC did not subscribe to the TSC Numbers "purely for the purpose of filing TCPA lawsuits[,]" *Morris*, 2016 WL 7115973 at *6, it made a business decision to purchase "thousands" of Twilio's "dirtiest" telephone numbers on a per-line charge, initially welcoming robocalls for the purpose of data collection and identification. Once continuing and known robocalls proved non-useful to its business model, and prevented TSC from exchanging a "clean" TSC Number for another "dirty" TSC Number to welcome *unknown* robocalls, it began to answer such calls. TSC then sought relief under a consumer protection statute based on 747 known and answered robocalls incident to its business. Based on these facts, it is not reasonable to assume that Congress intended to permit TSC's lawsuit.

TSC's remaining allegation—that ARS robocalls prevented TSC from returning "clean" TSC Numbers to Twilio for release to the general public, thereby impeding interstate commerce—does not place TSC within Section 227(b)'s protected zone of interests. As the Court previously recognized, the "TCPA enables individual relief stemming from individual violations; it does not contemplate generalized 'citizen-suit' protection." (R.127, Opinion at 30; *id.* at 18 ("TCPA confers a private right of action on the basis of individualized violations; it does not confer a right upon 'any person' to commence an action in the name of consumer protection")). Here, TSC has identified no duty or obligation to "cleanse" TSC Numbers for eventual use by the general public. The allegation that "[o]ver time, the Nomorobo service results in the 'dirty' numbers becoming 'cleansed,'" does not state an individualized interest in

12

interstate commerce facilitation. (R.129-3, Proposed Third Am. Compl. ¶ 16). More generally, TSC has failed to explain how Congress intended "to facilitate interstate commerce by restricting" the ARS robocalls at issue in this case. *See Patriotic Veterans*, 736 F.3d at 1050. Even with TSC's supplemental allegations, this case remains unlike the situation of TSC's own business customers, who subscribe to the Nomorobo service because they "have the right to run [their] business without constant harassment." (R.82-3, TSC Ltr. to FCC).

Although Congress authorized both natural persons and entities to bring individual TCPA claims, *see* 47 U.S.C. § 227(b)(3), TSC's proposed amendment does not establish its entitlement thereunder. TSC's supplemental allegations, in short, do not change the Court's prior reflection that:

> [T]he presence of explicit congressional findings and the statutory emphasis on "privacy rights" constrains the Court in reading Section 227(b)(3)'s "person or entity" language too broadly. *See* 47 U.S.C. §§ 227(b)(2)(C), 227(b)(2)(B)(ii); *Patriotic Veterans*, 736 F.3d at 1050 (citing the same as "noting the privacy interests behind the statute and requiring the [FCC] to consider privacy interests in using its rulemaking authority"); *see generally* Pub. L. No. 102-243, § 2. Indeed, according to its findings, Congress passed the TCPA, in part, because "technologies that might allow consumers to avoid receiving such [nuisance] calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." *See* Pub. L. No. 102-243, § 2, ¶ 11. Today, Nomorobo stands as one such technology, available to protect consumers from unwanted robocalls. The TCPA, meanwhile, stands as a *separate* protection mechanism. TSC's attempt to conflate the two, however, must fail.

(R.127, Opinion at 32). Accordingly, the Court denies TSC's Rule 15(a)(2) motion on futility grounds.[3] *See Gonzalez*, 791 F.3d at 808 ("We will not reverse a district court's decision, however, when the court provides a reasonable explanation for why it denied the proposed

---

[3] TSC asks the Court to infer from a recent minute entry in *Telephone Science Corporation v. Pizzo, et al.* No. 15-cv-1702 (E.D.N.Y. 2015), Dkt. Nos. 81, 83-85, that the District Court for the Eastern District of New York "implicitly ruled that TSC's proposed amended complaint was not futile." (R.151). Given that (i) no party in *Pizzo* moved to dismiss the complaint on "zone of interests" grounds, (ii) no party in *Pizzo* opposed TSC's motion for leave to amend, and (iii) the *Pizzo* court's minute entry reflects no reasoning apart from an acknowledgment that the motion was unopposed, the Court is not persuaded that the *Pizzo* court addressed the merits of TSC's supplemental allegations and deemed TSC within the statutory "zone of interests." This minute order, in short, does not affect the Court's present analysis.

amendment. A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint").

## CONCLUSION

For the foregoing reasons, the Court denies TSC's post-judgment motion for relief pursuant to Rules 59(e) and 15(a)(2). (R.129).

**Dated:** January 5, 2017                                ENTERED

                                                                                           _____
                                                                                           AMY J. ST. EVE
                                                                                           United States District Court Judge